UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SEAN T. DOUTRE,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO ARANAS, *et al.*,<br><br>Defendants. | Case No. 2:12-cv-00772-RFB-VCF<br><br>**OPINION & ORDER**<br><br>Defendants' Motion for Summary Judgment (Dkt. No. 21) and Plaintiff's Motion for a Preliminary Injunction (Dkt. No. 27) |

**I.  INTRODUCTION**

Before the Court is a Motion for Summary Judgment (Dkt. No. 21) filed by Defendants Romeo Aranas, Benedicto Gutierrez, and Cheryl Dressler and a Motion for a Preliminary Injunction (Dkt. No. 27) filed by Plaintiff Sean Doutre. For the reasons discussed below, the Motion for Summary Judgment is denied with respect to Defendant Aranas and deferred with respect to Defendants Gutierrez and Dressler. The Motion for a Preliminary Injunction is denied without prejudice.

**II.  BACKGROUND**

Plaintiff Sean Doutre, proceeding pro se in this action, is currently incarcerated at Southern Desert Correctional Center (SDCC). Doutre brought an action under 42 U.S.C. § 1983 against Defendants Aranas, Gutierrez, and Dressler alleging the violation of his Eighth Amendment right to be free from cruel and unusual punishment. Doutre also named Brandon Oliver, James Cox, James Bannister, and an unnamed Doe defendant in his complaint. All defendants were named in their individual and official capacities. On October 30, 2012, the Court screened Doutre's complaint (Dkt. No. 3) and dismissed the Eighth Amendment claims

against Cox and Bannister as well as Doutre's claims for damages against all defendants in their official capacities. The Court determined that Doutre's Eighth Amendment claims against Aranas, Gutierrez, Dressler, Oliver, and the Doe defendant could proceed. Following a 90-day stay during which no settlement was reached, the Attorney General accepted service on behalf of Aranas, Gutierrez, and Dressler; no service was accepted on behalf of Oliver, who is no longer an employee of the Nevada Department of Corrections (NDOC), or the Doe defendant. The Court's analysis of the motions currently before it thus pertains to Defendants Aranas, Gutierrez, and Dressler only.

Doutre suffers from ulcerative colitis, a chronic intestinal condition. In his complaint, Doutre alleges that between September and December of 2011, Defendants were deliberately indifferent to his serious medical needs. In September 2011, Doutre began to experience symptoms of ulcerative colitis, including abdominal pain, cramps, and rectal bleeding. On September 23, Doutre saw Aranas, a doctor employed by NDOC who works two days a week at SDCC, for an appointment. During the appointment, Doutre reported that he had been bleeding rectally and experiencing abdominal pains for approximately two weeks. During the appointment, Dr. Aranas performed a rectal examination of Doutre. Doutre claims that this examination was done without any warning and that he believes it was done out of anger and frustration due to Doutre disagreeing with Dr. Aranas regarding the type of medication he should be taking. Defendants maintain that Doutre "did not object" to the examination, Defs.' Mot. Summ. J. at 2, that a rectal examination is standard practice given such symptoms, and that Dr. Aranas, as a matter of professional practice, always informs his patients prior to administering such examinations. Id. at Ex. B. Following the examination, Dr. Aranas diagnosed Doutre as having an acute flare-up of ulcerative colitis, prescribed him several medications to treat his symptoms, and scheduled a follow-up appointment.

On October 10, 2011, Doutre had a follow-up appointment with Dr. Aranas where Doutre reported that his symptoms had improved. Doutre states that this visit took place in the open at the nurse's station. During this appointment, Doutre requested a special diet to help manage his symptoms. Defendants state that Dr. Aranas told Doutre that there was no special diet for colitis

and directed him to take milk of magnesia. Doutre alleges that Dr. Aranas made no such statement, but rather that he said Doutre would not be put on any type of diet and that he "had better not push it," Opp. Summ. J. at 4, and that Dr. Aranas then walked away and ended the visit.

Doutre was scheduled for two additional appointments, although the parties disagree as to the exact date. Defendants allege that Doutre was scheduled to come to the clinic on November 7, 2011 and December 5, 2011, and that Doutre did not show up for his appointments on either day. Doutre alleges that he believes his first appointment was scheduled for November 18 and that when he showed up, he stood "face to face" with Dr. Aranas as Dr. Aranas told a corrections officer that he would not see Doutre. On his next scheduled appointment on December 2, Doutre states that he again showed up to the clinic and observed Dr. Aranas tell a nurse that he would not see Doutre, at which point the nurse told Doutre to come back in three days' time. In three days, Doutre returned to the clinic and was told no doctor was available and to come back the next day. Doutre alleges that it was not until December 6 that he was seen by a doctor, at which point he was seen by Dr. Sanchez, another doctor at the clinic. At this appointment, Doutre informed Dr. Sanchez that he was experiencing bloody stool seven to eight times per day. Dr. Sanchez ordered a series of tests, including blood tests, a comprehensive metabolic panel, and a stool sample, and ordered Doutre to adhere to a diet of no milk or milk products. The blood test came back the following day, at which point Dr. Sanchez ordered further tests and directed Doutre to begin taking iron pills.

On December 8, 2011, Doutre states that he fainted while waiting in the pill call line. He was taken to see Dr. Sanchez, who diagnosed him with ulcerative colitis and anemia and ordered him transported to Valley Hospital Medical Center. Doutre was hospitalized for one week, during which time he was found to be severely anemic, received a blood transfusion and intravenous fluids, and experienced an episode of bradycardia in which his heart rate dropped to 30-40 beats per minute. Doutre was discharged from Valley Hospital on December 15, 2011 and returned to SDCC, where he reported to Dr. Sanchez that his symptoms had improved.

1  Throughout this period, Doutre filed several grievances and kites requesting additional
2  medical attention for his symptoms and disagreeing with the way he had been treated. Doutre
3  filed an informal grievance on October 10, 2011, in which he stated that he was filing a
4  complaint against Dr. Aranas for being "negligent, hostile, and just plain pompous," insisting on
5  giving a rectal exam instead of taking a stool sample, and ignoring Doutre's subsequent
6  complaints of worsening symptoms and requests for treatment. Pl.'s Opp. Summ. J., Ex. C. That
7  grievance was denied by Defendant Gutierrez on October 27, 2011. Doutre filed a first-level
8  grievance on November 8, 2011 in which he noted his disagreement with Gutierrez's decision. In
9  this grievance, Doutre reiterated his allegations that Dr. Aranas was hostile and indifferent
10 toward him and had ignored or delayed in responding to Doutre's symptoms. Doutre's first-level
11 grievance was denied by Defendant Dressler on December 27, 2011 and was received by Doutre
12 on January 18, 2012. Doutre filed a second-level grievance on January 17, 2012, alleging an
13 inadequate response to his informal grievance and a total lack of response to his first-level
14 grievance. He also complained of receiving absolutely no medical treatment between November
15 8, 2011 and December 6, 2011 despite filing an emergency grievance on November 22 and
16 medical kites on November 17, November 22, and December 2 alerting the medical department
17 at SDCC that his symptoms were worsening and stating that he was repeatedly sent away from
18 the clinic without being seen.

19 In this action, Doutre alleges that Aranas, Gutierrez and Dressler were deliberately
20 indifferent to his serious medical needs. Defendants filed a motion for summary judgment in
21 which they argue that Doutre failed to exhaust available administrative remedies with respect to
22 his claims against Gutierrez and Dressler, that Gutierrez and Dressler cannot be held liable
23 because they did not personally participate in Doutre's medical treatment, and that Dr. Aranas
24 was not deliberately indifferent to Doutre's medical need.

25 **III.   LEGAL STANDARD**

26 Summary judgment is appropriate when the pleadings, depositions, answers to
27 interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
28 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). Where a genuine dispute of material fact exists, however, the court will assume the version asserted by the non-moving party. See Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012) ("We must, in the context of summary judgment, resolve this disputed factual issue in favor of [the non-moving party and] draw all reasonable inferences in his favor . . . .").

If the nonmoving party can show that, for specified reasons, it is unable to present essential facts in opposition to a motion for summary judgment, Rule 56(d) permits the court to defer consideration of the motion, deny the motion, allow for additional discovery, or issue any other appropriate order. Where the parties have not yet had the benefit of discovery, "summary judgment is disfavored . . . particularly in cases involving confined pro se plaintiffs." Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004) (citing Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988)).

IV. ANALYSIS

A. Exhaustion of Administrative Remedies

Defendants concede that Doutre has exhausted administrative remedies with respect to his claim against Aranas and thus can proceed with a § 1983 action against him. They argue, however, that Doutre has not exhausted administrative remedies with respect to his Eighth Amendment claim against Gutierrez and Dressler. Defendants contend that Doutre's grievances were specifically directed toward Dr. Aranas, that Doutre did not name Gutierrez or Dressler in any of his grievances, and that Gutierrez and Dressler's "only interaction with [Doutre] was in answering the grievance." Mot. Summ. J. at 8.

The Prison Litigation Reform Act (PLRA) requires that before bringing a § 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion must be proper, meaning that the prisoner must proceed through each step of the prison's grievance procedure. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing Woodford v. Ngo, 548 U.S. 81, 93 (2006)). The level of detail needed in a grievance to properly exhaust under the PLRA depends on the applicable grievance procedures of each individual prison. Jones v. Bock, 549 U.S. 199, 218 (2007). In the absence of a prison policy or procedure specifying a particular level of detail at which grievances must be stated, the Ninth Circuit has held that a grievance is sufficient for exhaustion purposes "if it alerts the prison to the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).

In this case, the Court finds that Doutre has exhausted administrative remedies with respect to his claims against Gutierrez and Dressler. Doutre's grievances complaining of the treatment given by Dr. Aranas sufficed to put the prison on notice of the nature of his problem, and nothing in the PLRA or in NDOC's grievance procedures requires that a grievant specifically name defendants. In Jones, the Supreme Court reversed the Sixth Circuit's decision which held that in order to satisfy the exhaustion requirement, plaintiffs must name in their initial grievances each defendant that was later sued. The Supreme Court noted that the grievance procedures at issue "did not contain any provision specifying who must be named in a grievance" and held that the PLRA likewise does not impose a "name all defendants" requirement: "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 217-19; see also id. at 219 (providing notice to individuals who may later be sued "has not been thought to be one of the leading purposes of the exhaustion requirement."). In this case, the Court has not found any provision in NDOC's grievance procedures that would require Doutre to name in his grievances each defendant later sued in a civil action. It is enough for purposes of exhaustion that Doutre's grievances put the prison on notice of "the nature of the wrong for which redress is sought." Griffin, 557 F.3d at 1120 (quotation omitted).

In this case, that wrong was the prison's failure to adequately respond to his medical needs. Doutre has thus sufficiently exhausted his administrative remedies.

**B.  Summary Judgment as to Defendants Gutierrez and Dressler**

Defendants submit to this Court that Gutierrez and Dressler are entitled to summary judgment because liability cannot attach in a § 1983 claim absent a showing of personal participation or direction in the alleged constitutional violation. Defendants argue that Gutierrez and Dressler's only involvement in relation to Doutre's medical care was to review and deny the grievances that he filed, and that this involvement is not enough to establish personal participation under § 1983. In response, Doutre claims that there are multiple disputed issues of material fact with respect to the degree of involvement of Gutierrez and Dressler in Doutre's medical treatment as well as their knowledge of the severity of his symptoms during the time that he was denied medical care. In addition, Doutre states that he has not had the benefit of discovery, and has submitted a declaration in which he requests additional time to engage in discovery and states that discovery will enable him to provide proof of his claims. See Pl.'s Opp. Summ. J., Ex. B.[1]

Gutierrez and Dressler are not entitled to summary judgment at this time. Doutre has not yet had the opportunity to request or obtain evidence of his claims against Gutierrez and Dressler, and in addition has submitted a declaration pursuant to Rule 56(d) which refers to his need to develop the factual record to "prove germane facts of his claim." Id. Further, Doutre is proceeding without counsel, and the Ninth Circuit has instructed district courts to "construe liberally motion papers and pleadings filed by *pro se* inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). When requests for additional discovery have been made, summary judgment "is appropriate only where such discovery would be fruitless with respect to the proof of a viable claim." Blanas, 393 F.3d at 930 (internal quotation and citation omitted). The Ninth Circuit has emphasized that, in cases where there has been no discovery, "summary judgment is disfavored . . . particularly in cases

---

[1] Although Doutre's declaration as written is pursuant to Rule 56(f), the Court notes that that provision was relabeled as Rule 56(d) in the 2010 Amendment to the Federal Rules of Civil Procedures. The Court thus construes Doutre's declaration as being pursuant to Rule 56(d).

- 7 -

1   involving confined pro se plaintiffs." Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004) (citing Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988)). In this case, there has been no discovery at all, and in his briefing to the Court, Doutre identified specific and material factual issues relevant to his claim against Gutierrez and Dressler that he has not yet been able to investigate or prove. Therefore, pursuant to Rule 56(d), the Court grants Doutre's request for discovery and defers a ruling on summary judgment until he has had an opportunity to obtain discovery from Defendants. See, e.g., Calloway v. Veal, 571 F. App'x 626 (9th Cir. 2014) (vacating a district court's grant of summary judgment for defendants when the plaintiff, appearing *in forma pauperis* and in pro per while incarcerated, had not had an adequate opportunity to conduct discovery, and construing the plaintiff's opposition to summary judgment as a request for additional discovery under Rule 56(d)).

### C. Summary Judgment as to Defendant Aranas

Defendants argue that Dr. Aranas did not violate Doutre's Eighth Amendment rights. They claim that there is no evidence to suggest that Aranas knowingly disregarded a substantial risk to Doutre's health. Instead, Defendants contend that Aranas treated Doutre "responsively and responsibly given the information he had at the time," Defs.' Mot. Summ. J. at 2, by examining him, reviewing his medical records, diagnosing him, and prescribing him medication. According to Defendants' brief, Aranas "had no information that would suggest [Doutre] was losing so much blood that hospitalization was required," particularly since Doutre missed two of his scheduled appointments. In sum, Defendants conclude that Doutre's claim amounts to nothing more than a "difference of opinion" regarding treatment or a dislike of Aranas's bedside manner, neither of which amounts to a constitutional violation. In response, Doutre argues that the conflicting factual allegations in the parties' briefs and declarations show that genuine issues of material fact exist as to his Eighth Amendment claim against Aranas. Specifically, Doutre alleges that Aranas showed "a complete lack of concern and treatment for [Doutre's] worsening complaints of pain" and "deliberately chose to ignore [Doutre's] worsening condition by refusing to see him when he showed up for appointments . . . ." Pl.'s Opp. Summ. J. at 14.

. . .

To establish an Eighth Amendment claim against prison officials for medical treatment, an incarcerated plaintiff must show deliberate indifference to his serious medical needs. Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has established a two-part test for deliberate indifference: first, the plaintiff must establish a serious medical need, meaning that failure to treat the condition could result in "significant injury or the unnecessary and wanton infliction of pain." Id. (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation omitted)). Second, the plaintiff must demonstrate the defendant's deliberate indifference to the need, meaning that the prison official "knows of and disregards an excessive risk to inmate health." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The defendant's indifference to or interference with the plaintiff's medical care must be intentional; negligence will not suffice to state a deliberate indifference claim. Jett, 439 F.3d at 1096. Further, the plaintiff must show that harm resulted from the defendant's indifference, although the harm need not necessarily be substantial. Id.

Here, Aranas is not entitled to summary judgment. The Court finds it to be undisputed that Doutre meets the first part of the deliberate indifference test. Doutre's diagnosis of ulcerative colitis is a serious medical need that satisfies the first prong of the deliberate indifference test. It is also clear from his grievances that Doutre alerted the prison to the fact that his condition had resulted in his previous hospitalization and that he believed there were and are known preventive treatments that can help manage the symptoms of ulcerative colitis. Defendants do not deny that ulcerative colitis is a serious medical need that, left untreated, can cause significant injury and pain. Neither do Defendants deny—in their briefs, declarations nor otherwise—that Doutre suffered from ulcerative colitis, that this condition can flare up and cause significant injury, that it requires regular and ongoing monitoring and treatment, or that there are diets and other preventive treatments that can help manage the symptoms of ulcerative colitis. Therefore, it appears undisputed that Doutre has established a serious medical need.

With respect to the second part of the deliberate indifference test, the Court identifies several genuine issues of material fact as to whether Aranas was deliberately indifferent to Doutre's serious medical need. As it must on a motion for summary judgment, the Court views

1  the facts and draws all inferences in the light most favorable to Doutre, and the Court also
2  liberally construes motion papers and avoids strict application of summary judgment rules for
3  pro se inmate plaintiffs. Thomas, 611 F.3d at 1150.

4  First, there is a genuine issue of material fact as to which party was at fault for Doutre not being seen for follow-up appointments at the clinic after Aranas had diagnosed him with a serious condition that requires monitoring and ongoing treatment. In his sworn statement, Doutre claims that he showed up to the clinic for scheduled appointments on November 18, 2011 and December 2, 2011 and that Aranas refused to see him despite knowing that Doutre was present. See Decl. of Sean Doutre in Pl.'s Opp. Summ. J. at 4-5. Defendants claim that Doutre's appointments were actually scheduled for November 7, 2011 and December 5, 2011 and that Doutre did not show up for these appointments. See Defs.' Mot. Summ. J. at 3. Doutre has provided sufficient evidence to enable a reasonable juror to find that Aranas turned Doutre away when he showed up for his appointments despite having diagnosed him with a serious medical condition.

Second, a genuine issue of material fact exists as to whether Aranas deliberately ignored Doutre's complaints of worsening symptoms of colitis and continued to refuse to see him in the clinic despite knowledge of these symptoms. Doutre states that he submitted an emergency grievance on November 22, 2011 stating that his symptoms of colitis were continuing to get worse and were very severe at that point. Doutre states that he complained that his "bleeding was getting a lot worse" and that "it hurt to eat and . . . to go to the bathroom." Decl. of Sean Doutre in Pl.'s Opp. Summ. J. at 5. Doutre also alleges that at the time he filed this emergency grievance, "[his] physical symptoms were so bad that the officers who worked in the unit recognized [he] wasn't doing well." Id. Doutre states that he was told that the medical department informed the grievance respondents that his situation was not life-threatening and that he would not be seen. Nowhere in their submissions to this Court do Defendants deny that Doutre submitted an emergency grievance complaining of worsening symptoms of colitis. Defendants also do not deny that Aranas was aware of Doutre's grievance or the complaints contained within it, that Aranas received a copy of the grievance, or that Aranas was involved in

responding to the grievance. Doutre has established sufficient facts to allow a reasonable juror to find that Aranas ignored or dismissed Doutre's emergency grievance complaining that his bleeding and other symptoms of colitis were becoming more severe and that this failure to respond caused harm to Doutre, thus constituting deliberate indifference.

Third, a genuine issue of material fact exists as to whether Aranas was aware of and failed to respond to a medical kite submitted by Doutre on November 17, 2011, stating that his ulcerative colitis had flared up again and that Doutre was bleeding. See Medical Records of Sean Doutre Submitted Under Seal (Dkt. No. 52) ("Doutre Sealed Medical Records").[2] Defendants do not deny that Doutre submitted this and other kites. In his brief, Doutre argues that his submission of medical kites, combined with his grievances and appearances at the clinic, put Defendants on notice of his condition and prove that they were aware of his worsening symptoms. See Pl.'s Opp. Summ. J. at 16. Viewing the facts and drawing all inferences in the light most favorable to Doutre, a reasonable juror could find that Aranas, already being aware of Doutre's serious medical need, ignored or otherwise failed to respond to Doutre's request for medical attention and report of worsening symptoms and that this failure amounted to deliberate indifference.

Fourth, a genuine issue of material fact exists as to whether Aranas ignored Doutre's request for treatment made via a medical kite submitted on November 22, 2011, stating that Doutre had a severe case of ulcerative colitis and was sent away from his appointment on November 18 without being seen. See Doutre Sealed Medical Records (Dkt. No. 52). Defendants do not deny that Doutre submitted this kite.

For reasons discussed above, a reasonable juror could find that Aranas, already being aware of Doutre's serious medical need, was deliberately indifferent to that need by ignoring or failing to respond to this request for medical attention.

---

[2] The medical kites submitted by Doutre on November 17, November 22, and December 2 of 2011 were provided to the Court by the Nevada Department of Corrections pursuant to an Order Compelling the Production of Documents (Dkt. No. 48). The Court hereby takes judicial notice of all medical records submitted under seal pursuant to said Order (Dkt. Nos. 49, 50, 51, 52, and 53).

Fifth, a genuine issue of material fact exists as to whether Aranas ignored Doutre's request for treatment made via a medical kite submitted on December 2, 2011, stating that Dr. Aranas still refused to see him despite the fact that he had complained of diarrhea and bleeding two weeks earlier and his condition had not improved. See id. Defendants do not deny that Doutre submitted this kite. For reasons discussed above, a reasonable juror could find that Aranas, already being aware of Doutre's serious medical need, was deliberately indifferent to that need by ignoring or failing to respond to this request for medical attention.

Sixth, there is a genuine issue of material fact as to whether Aranas, having diagnosed Doutre with a serious medical condition, should have implemented and followed a regimen of monitoring, follow-up testing, and preventive treatment for Doutre prior to his hospitalization. In his initial grievance to the prison filed on October 10, 2011, Doutre states that "without early and proper medical attention" a flare-up of ulcerative colitis "can be life threatening and if ignored can lead to more serious health conditions such as colon cancer." Pl.'s Opp. Summ. J., Ex. C. Doutre also states in his grievances that "there are known treatments that work in preventing flare ups and help make any symptoms of ulcerative colitis disappear, and help in preventing further damage," id., and that "until steps are taken to provide [him] with proper long term treatment and preventitive [sic] treatment [he is] going to continue to have health problems and frequent flare-ups of ulcerative colitis." Id. at Ex. D. These statements clearly indicate Doutre's strong belief that, while severe, his condition can be managed and his symptoms can be prevented from worsening through proper long-term care, monitoring and preventive treatment—a belief that is not disputed or denied by Defendants. In fact, Doutre requested a special diet to manage his symptoms, including probiotics and Omega 3 supplements. See Decl. of Dr. Romeo Aranas in Defs.' Mot. Summ. J., Ex. B. However, Doutre states that in response to this request, Aranas told him that he would not be put on any type of diet and that he "had better not push it." Decl. of Sean Doutre in Pl.'s Opp. Summ. J. at 4. Defendants' submissions do not address the issue of preventive treatment or follow-up care, but Defendants do argue that Aranas properly treated Doutre at his appointments on September 23 and October 10. They further argue that, since Doutre reported on October 10 that his symptoms were improving and then missed his

next two scheduled appointments, Aranas had no information suggesting that Doutre's symptoms were worsening or that he would need to be hospitalized. See Defs.' Mot. Summ. J. at 9-11. However, this argument is contradicted by Doutre's sworn statement that he showed up for his two scheduled appointments in November and December and that Aranas refused to see him each time. In his sworn statement, Dr. Aranas also states that he told Doutre that there is no special diet for ulcerative colitis and that he ordered milk of magnesia for Doutre's symptoms. Decl. of Dr. Romeo Aranas in Defs.' Mot. Summ. J., Ex. B. However, Defendants (specifically Dr. Aranas) do not deny that there may be diets or other treatments that can help prevent symptoms of colitis from becoming more severe. In addition, Aranas's statement that there is no special diet for colitis is at least called into question by the fact that when Doutre saw Dr. Sanchez for his symptoms on December 6, Dr. Sanchez placed him on a dietary restriction of no milk or milk products. See Defs.' Mot. Summ. J. at 4. Thus, Doutre has provided sufficient evidence to enable a reasonable juror to find that Aranas was aware that Doutre suffered from a serious condition that required consistent follow-up and a preventive treatment regimen. A reasonable juror could also find that Aranas did not follow any such treatment plan or regimen, including follow-up appointments and a diet designed to manage Doutre's symptoms, and that this failure to act exacerbated Doutre's condition and constituted deliberate indifference.

The Court therefore finds that Doutre has established genuine issues of material fact as to whether Aranas refused to see Doutre at his follow-up appointments in November and December despite knowing that he suffered from a serious condition requiring consistent treatment, whether Aranas explicitly ignored Doutre's complaints that his symptoms were worsening and refused to see him despite his filing of an emergency grievance and three medical kites requesting treatment, and whether Aranas should have followed a preventive treatment and monitoring regimen to prevent Doutre's condition from becoming worse. The establishment of any one of these facts at trial, or a combination of them, could enable a jury to find for Doutre on his deliberate indifference claim. The Court therefore denies Aranas's motion for summary judgment.

**D. Plaintiff's Motion for Preliminary Injunction**

Doutre has also requested that this Court issue a preliminary injunction against Defendants requiring them to ensure that Doutre is examined and given a plan of treatment by a specialist and to provide any other medication and treatment necessary to address Doutre's symptoms. Doutre filed this request on May 15, 2013, alleging that he began experiencing severe symptoms of colitis on April 23, 2013, that he had been without his prescribed medications for more than two weeks, and that the medical department at SDCC had refused to respond to his requests for treatment or put him on the list to be seen by medical staff. Doutre's motion for a preliminary injunction was also labeled as a request for a temporary restraining order. On May 21, 2013, this Court denied Doutre's motion for a temporary restraining order because he failed to adequately demonstrate that he would suffer immediate and irreparable harm prior to Defendants filing their response. See Order (Dkt. #28).

"A plaintiff seeking a preliminary injunction must establish: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). The Ninth Circuit continues to apply the "serious questions" test for preliminary injunctions. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1134-35 (citation omitted). The Supreme Court has stated that an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

Based upon representations made by Doutre at the hearing on this motion as well as the Court's review of medical records submitted by NDOC, Doutre is not entitled to a preliminary injunction at this time because he has not demonstrated that "irreparable harm is likely to result in the absence of the injunction." Alliance for the Wild Rockies, 632 F.3d at 1135. Following the

filing of his motion for a preliminary injunction, Doutre was transferred to Northern Nevada Correctional Center (NNCC), where a colonoscopy was performed. See Doutre Sealed Medical Records (Dkt. No. 50). Since then, it appears that Doutre's symptoms have remained stable and he has made no major complaints to either NNCC or SDCC regarding his symptoms of ulcerative colitis. At the hearing on this matter, Doutre stated that he was satisfied with the current treatment he was receiving. The Court therefore finds that at the present time an injunction is not necessary to prevent likely irreparable harm. However, should there be a change in the medical treatment Doutre is receiving from SDCC, Doutre will not be prohibited from filing another motion for a preliminary injunction or temporary restraining order to prevent further damage to his health.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is DEFERRED with respect to Defendants Gutierrez and Dressler. Upon the close of discovery, Defendants Gutierrez and Dressler may move the Court to consider their previously submitted motion or submit a new or amended motion for summary judgment.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is DENIED with respect to Defendant Aranas.

IT IS FURTHER ORDERED that Plaintiff's Motion for a Preliminary Injunction is DENIED without prejudice.

DATED this 8th day of October, 2014.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**